Rebecca Cambreleng, OSB No. 133209
rebecca@workplacelawpdx.com
Ashley A. Marton, OSB No. 171584
ashley@workplacelawpdx.com
**CAMBRELENG & MARTON LLC**
3518 S Corbett Ave
Portland, Oregon 97239
Telephone:  503-477-4899
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

(Portland Division)

| | |
|---|---|
| **TAYLOR BLINN**, an individual,<br><br>     Plaintiffs,<br><br>v.<br><br>**CITY OF TUALATIN**, a public entity,<br><br>     Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

## NATURE OF THE ACTION

1.  This is an action under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 2000e-3(a), alleging sex discrimination and retaliation for opposition to gender discrimination.

2.  Plaintiff also brings state law claims for sex discrimination in employment, ORS 659A.030(1)(a); hostile work environment based on sex pursuant to ORS 659A.030(1)(a),

retaliation under ORS 659A.030(1)(f), and whistleblower retaliation pursuant to ORS 659A.199, all pursuant to the court's supplemental jurisdiction.

## JURISDICTION AND VENUE

3. This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331.

4. The court has jurisdiction over Plaintiff's state law claims set forth in this complaint pursuant to its supplemental jurisdiction to hear related state law claims under 28 U.S.C. § 1367(a). Both the federal and state claims alleged herein arose from a common nucleus of operative fact, the state action is so related to the federal claim that they form part of the same case or controversy, and the actions would ordinarily be expected to be tried in one judicial proceeding.

5. The employment practices described herein are alleged to have been committed in the District of Oregon.

## PARTIES

6. Plaintiff **TAYLOR BLINN** is a female resident and citizen of the state of Oregon, who was at all material times employed by Defendant. At all material times, she was an employee for the purposes of the claims set forth herein.

7. Defendant **CITY OF TUALATIN** ("Tualatin") is a public entity. The **TUALATIN POLICE DEPARTMENT** ("TPD") is a department or division of Tualatin. At all material times, Tualatin employed 50 or more employees and was and is an employer and/or person for the purposes of the claims set forth in this complaint.

//

## PROCEDURAL REQUIREMENTS

8.  Plaintiff timely filed her administrative complaints with the Oregon Bureau of Labor and Industries and the Equal Employment Opportunity Commission.

9.  Plaintiff has timely satisfied all administrative prerequisites, if any, to the filing of the statutory claims set forth in this complaint.

## GENERAL ALLEGATIONS

10. Plaintiff began working for TPD in 2018 as an officer and was one of only two female officers employed by TPD at that time.

11. From the very outset of her employment, Plaintiff experienced gender discrimination and found that TPD functioned as an "old boys club," where male officers received preferential treatment while females were disregarded or subjected to sexist and inappropriate comments.

12. As far back as her time at the police academy, Plaintiff had been subjected to comments about her gender, including that women are "sensitive" around "that time of the month," and that she was "easily offended" because she spoke up against inappropriate comments. From these experiences, Plaintiff had learned to keep her head down and ignore mistreatment if she wanted to keep her harassment from escalating.

13. At TPD, Plaintiff was repeatedly passed over for assignments that were given to less qualified male candidates and was told it was because she was too "in the drama."

14. In 2022, Plaintiff applied for and was accepted to a special assignment position that came with a 5% raise. Despite receiving overwhelmingly positive feedback from the panel that interviewed her for the position, Plaintiff experienced significant pushback before receiving

the assignment and was initially told by her Sergeant that administration would not approve it.

15. Although the assignment was supposed to last for a 5-year term, Plaintiff was pulled from her assignment and placed back on patrol duty after approximately a year and her pay raise was taken away.

16. By contrast, one of Plaintiff's male peers was similarly pulled from his special assignment but was allowed to keep his 5% raise and had a new position created solely for him in order to keep his raise. No such arrangement was ever offered to Plaintiff.

17. In May 2023, Plaintiff was pressured by her patrol captain, Captain Rankin, to participate in filming a recruitment video. As a "token" female officer, Plaintiff was wary of being filmed and reluctantly agreed to participate only after Capt. Rankin downplayed Plaintiff's involvement and assured her there would be other officers present.

18. On the day of filming, no other officers were present when Plaintiff showed up, and she alone had to deliver the recruitment speech for the video. Plaintiff felt forced to go along, but later informed Capt. Rankin that she felt extremely uncomfortable about the situation and rescinded her permission to be used in the video.

19. Capt. Rankin met with Plaintiff a week later and yelled at her for wasting people's time and money and told her there would be fewer opportunities for her in the department moving forward.

20. Plaintiff reported Capt. Rankin's hostile behavior to her union but was told she should be grateful for the opportunity she was given and that she was being a "brat." Plaintiff tried applying for transfers to departments away from Capt. Rankin, but ultimately decided to persevere in her present department.

21.     From September 15 through 20, 2024, Plaintiff attended a firearms training course in Florida. Prior to the training, she requested clarification regarding the compensation for attending the program and travel time. Capt. Rankin told Plaintiff that she was the only one "making a big deal" out of the compensation, and that if she continued asking about it, she wouldn't be allowed to attend.

22.     On the first night of training, Plaintiff reported to her supervisor, Sergeant Eric French, and others, that she was being targeted for harassment and retaliation by Capt. Rankin. Plaintiff told Sgt. French that she believed Capt. Rankin was planning to retaliate against her for inquiring about her pay, and that he was trying to pressure her to quit because she wouldn't "fall in line."

23.     Four days after the training ended, on September 24, 2024, Plaintiff received notice of an IA investigation against her. The complaint accused Plaintiff of making "toxic and disparaging comments" about TPD at a women in law enforcement training in July 2024.

24.     The emphasis of the training was geared toward how to make good choices to help advance one's career as a female in law enforcement. The class discussed perceptions, how to handle rumors, and to present stories in a positive way for learning. Attendees were all told the training was a safe place to bring up stories and discussions.

25.     The investigation was assigned to the Professional Standards Unit at Hillsboro Police Department and an investigator from the City of Hillsboro was assigned.

26.     Assigning this investigation to an outside agency was a departure from other similar investigations of male employees.

27.     The normal investigation process within Tualatin PD has been to handle IA

Page 5 – COMPLAINT

CAMBRELENG & MARTON LLC
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

complaints internally unless there is a criminal violation alleged, in which case those have been outsourced to Washington County Sherriff's office. As soon as the criminal allegations are cleared, it is again handled internally for the officers.

28. By October 2024, Capt. Rankin had removed several of Plaintiff's job duties, including removing her from her teaching role at the Oregon Department of Public Safety Standards and Training (DPSST), which came with a reduction in pay.

29. On November 20, 2024, the IA investigator sent a memorandum to Capt. Rankin finding no violations of any policy or rules by Plaintiff.

30. In the report, the IA investigator noted that the complaint against Plaintiff started only with a brief conversation that was passed through 3 people, and the complaining officer, Sgt. Nate Cooper, did not intend to file a formal complaint until notified by the Chief that he was to file a formal complaint.

31. Plaintiff was cleared of the accusations against her on November 21, 2024. Despite being cleared, she was not allowed to return to teaching at DPSST because of the IA investigation and at Capt. Rankin's direction.

32. The following month, Plaintiff was pulled into a meeting with her supervisor, Sgt. Kevin Miller, and presented with a series of graphs purporting to show the traffic stop statistics of each officer in the department compared to Plaintiff. Plaintiff was told her traffic stop numbers were inadequate, and that based on the new direction from Capt. Rankin, those "stats" were now an important factor in evaluating officer performance.

33. On January 24, 2025, Plaintiff again met with Sgt. Miller to go over her updated traffic stop "stats." Sgt. Miller again told Plaintiff that her traffic stop numbers were lacking

comparatively to the other officers, and that she should attempt to do at least two stops a day to "keep [Rankin] off your back." Plaintiff was threatened with corrective action if she did not start doing more traffic stops and "improving" her "stats."

34. Acting on her supervisor's orders, Plaintiff engaged in four lawful traffic stops on January 25, 2025. During one such stop, Plaintiff spoke with a citizen while issuing them a written warning and mentioned that there was a new requirement to make more traffic stops. Upon information and belief, that citizen chose to contact the City of Tualatin, though what was said is unknown.

35. On January 30, 2025, Capt. Rankin issued notice of a second IA investigation against Plaintiff, citing **22** policy violations based on the lawful traffic stops she conducted on January 25, 2025.

36. The violations included such allegations as failure to follow the "lawful directives and orders from any department supervisor," disclosing her status as a police officer with TPD "as an attempt to gain influence or authority for non-department business or activity," failure to follow policies related to "employee use of social networking sites," and engaging in "disobedient" behavior.

37. Instead of returning to the same IA investigator from the Hillsboro Police Department who had conducted Plaintiff's previous investigation, Capt. Rankin sought out a different third-party investigator - Jim Ferraris.

38. This was the second time Capt. Rankin took the unprecedented step of hiring a third-party investigator over a minor internal complaint.

39. After being alerted to the IA investigation, Plaintiff's team requested in writing

a copy of the body camera footage regarding her January 25, 2025, traffic stop. That footage was never produced.

40. On February 4, 2025, Plaintiff filed a tort claim notice against TPD, alleging gender discrimination and retaliation. Yet another third-party investigator, Jim Band, was hired to investigate Plaintiff's allegations. The findings of that investigation were never provided to Plaintiff.

41. On April 29, 2025, more than 3 months since her second IA investigation was started, and with no resolution or interview, Plaintiff was notified of a new professional standards investigation against her.

42. The notice of investigation contained no operative facts or allegations other than that Plaintiff "made misleading and possibly untruthful statements." Defendant refused to disclose to Plaintiff's union representative or attorney what statements were allegedly untruthful and where/how those statements were made.

43. Plaintiff was immediately relieved of her duties and placed on administrative leave.

44. In May, Mr. Ferraris scheduled an investigatory interview with Plaintiff for June 23, 2025. Plaintiff still was not given any information about what statements she may have made and when/where those statements were made so she could familiarize herself with the circumstances.

45. On June 17, 2025, Plaintiff and her attorney were informed that the interview would be postponed because Mr. Ferraris needed to conduct a "deeper dive" into the investigation report.

46.     The reason for this "deeper dive" was to "ensure that the notice" was properly given.

47.     Upon information and belief, the reason for the "deeper dive" was that there was no solid factual basis for the allegation of untruthfulness against Plaintiff.

48.     On June 20, 2025, while still out on indefinite administrative leave, Plaintiff was constructively discharged from her employment with Defendant.

## DAMAGES ALLEGATIONS

49.     As a result of the actions alleged herein, Plaintiff has and will continue to suffer economic damages. Plaintiff is entitled to recover from Defendant such lost wages and benefits of employment and other economic losses in such amount as may be established at trial.

50.     As a further result of Defendant's actions alleged herein, Plaintiff has suffered and is entitled to recover for their noneconomic damages in an amount found to be appropriate by a jury based on the evidence presented at trial.

51.     Plaintiff is entitled to such equitable and other relief in their favor on such terms as the court may direct.

52.     Plaintiff is entitled to recover their reasonable attorney's fees, reasonable expert witness fees, and other costs of the action to be paid by the defendant pursuant to 42 U.S.C. § 2000e-5(k); ORS 659A.885; and/or ORS 20.107.

## FIRST CLAIM FOR RELIEF

### (42 U.S.C. § 2000e-2(a) – Sex Discrimination)

53.     Plaintiff incorporates paragraphs 1 through 52 as though fully set forth herein.

54.     Plaintiff identifies as female.

55. Defendant discriminated against Plaintiff in the terms and conditions of her employment as alleged herein in substantial motivating part due to her sex.

56. Defendant knew, or should have known, of the ongoing and pervasive harassment by Capt. Rankin against Plaintiff and did not take prompt, remedial action to stop the harassment.

57. Defendant's actions violated 42 U.S.C. §2000e-2(a) and Plaintiff is entitled to appropriate relief.

## SECOND CLAIM FOR RELIEF

### (ORS 659A.030(1)(a) et seq. – Sex Discrimination)

58. Plaintiff incorporates paragraphs 1 through 52 as though fully set forth herein.

59. It is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions, or privileges of employment on the basis of an individual's sex or gender identity.

60. Defendant discriminated against Plaintiff in the terms and conditions of her employment as alleged herein in substantial motivating part due to Plaintiff's sex.

61. Defendant's conduct as described herein is in violation of ORS 659A.030(1)(b).

## THIRD CLAIM FOR RELIEF

### (ORS 659A.030 – Hostile Work Environment)

62. Plaintiff incorporates paragraphs 1 through 52 as though fully set forth herein.

63.  Defendant subjected Plaintiff to a hostile work environment based on her sex. Defendant engaged in a pattern and practice of ignoring and condoning harassment and discrimination against Plaintiff due to her sex. The harassment was pervasive, severe, offensive, and outrageous.

64.  Defendant's actions had the purpose and effect of creating an intimidating, hostile, and offensive working environment based on Plaintiff's sex, and had the effect and purpose of unreasonably interfering with Plaintiff's work and wellbeing.

65.  Despite receiving multiple complaints of harassment, Defendant failed to properly investigate, failed to take appropriate action to prevent harm to Plaintiff, and instead aided, abetted, and incited the harassment and discrimination against Plaintiff.

## FOURTH CLAIM FOR RELIEF

### (Retaliation ORS 659A.030(1)(f))

66.  Plaintiff incorporates and realleges paragraphs 1 through 52 by reference as though set forth fully herein.

67.  It is an unlawful employment practice for any person to discharge, expel or otherwise discriminate against any other person because that person has opposed any unlawful practice under ORS Chapter 659A or has attempted to do so.

68.  Defendant discriminated against Plaintiff in the terms and conditions of her employment as alleged herein in retaliation for Plaintiff's opposition to and complaints and reports of discrimination due to gender, which constitute violations of law, regulation, and rule.

//

//

3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

## FIFTH CLAIM FOR RELIEF

## (Retaliation 42 U.S.C. §2000e-3(a))

69. Plaintiff incorporates and realleges paragraphs 1 through 52 by reference as though set forth fully herein.

70. Plaintiff resisted and opposed discriminatory actions directed toward her by Defendant as alleged herein.

71. Plaintiff's complaints were protected opposition to discrimination under federal and state law.

72. Because of Plaintiff's protected opposition, Defendant engaged in conduct that would dissuade a reasonable worker from making or supporting a charge of discrimination in violation of 42 U.S.C. § 2000e-3(a).

## SIXTH CLAIM FOR RELIEF

## (Retaliation)

### Count 1: ORS 659A.199

73. Plaintiff incorporates paragraphs 1 through 52 by reference as though set forth fully herein.

74. It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation.

75. Plaintiff in good faith made reports and complaints relating to violations as

alleged herein which constituted protected conduct under ORS 659A.199.

76. Defendant discriminated against Plaintiff in the terms and conditions of her employment because of such protected conduct in violation of ORS 659A.199.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to:

1. Declare Defendant in violation of the statutes set forth in Plaintiff's claims for relief;

2. Order Defendant to make Plaintiff whole by providing compensation for non-economic losses in an amount as awarded by the court or a jury;

4. Award Plaintiff her costs of suit and reasonable attorney fees, costs, and expert witness fees;

5. Order Defendant to pay prejudgment interest and post-judgment interest on all amounts due to Plaintiff as a result of this action, with interest at the prevailing rate; and

6. Order such further or alternative relief in favor of Plaintiff as the court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all questions of fact or combined questions of law and fact raised by this complaint.

//

//

//

//

DATED October 13, 2025.

                                              CAMBRELENG & MARTON LLC

By:   */s Rebecca Cambreleng*
       Rebecca Cambreleng, OSB No. 133209
       Rebecca@workplacelawpdx.com
       Ashley Marton, OSB No. 171584
       Ashley@workplacelawpdx.com
       CAMBRELENG & MARTON LLC
       3518 S Corbett Avenue
       Portland, Oregon 97239
       Telephone: (503) 477-4899
       *Attorneys for Plaintiff*